# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 17-cr-00150-5 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| TERRANCE HAMMONDS | ) | |
| | **)** | |

## MEMORANDUM OPINION AND ORDER

Defendant Terrance Hammonds ("Hammonds") has been charged along with five co-defendants in a twenty-two count Superseding Indictment for his role in an alleged drug-trafficking conspiracy. Hammonds has been charged in two of the counts: Count One, for conspiring to possess with intent to distribute and distribute more than one kilogram of a mixture containing heroin, in violation of 21 U.S.C. § 846; and Count Sixteen, for possessing with intent to distribute a quantity of a mixture and substance containing heroin, in violation of 21 U.S.C. § 841(a)(1). Hammonds was arrested after police officers discovered heroin in his possession during what the Government describes as a consensual encounter. Hammonds has moved to suppress the heroin and any other evidence obtained as a result of his arrest. (Dkt. No. 213.) For the reasons explained below, the Court grants the motion.

## BACKGROUND

The Court held an evidentiary hearing regarding the instant motion on February 26, 2019. At the hearing, two Chicago Police Department officers, Detective Brian Leahy and Officer Roberto Del Cid, testified. The Government also introduced into evidence a satellite map of the area where Officer Del Cid stopped Hammonds. The following summarizes the evidence adduced at the hearing.

On the evening of Friday, March 3, 2017, Detective Leahy was on patrol in an unmarked squad car near the intersection of Division Street and Cicero Avenue on the west side of the City of Chicago when he observed a red Nissan Altima exiting an alley onto Division Street. Detective Leahy recognized the driver of the vehicle as Charles Pinkins, an individual Detective Leahy believed to be the leader and heroin supplier of the Big Money Family, a faction of the Conservative Vice Lords street gang. Detective Leahy and Officer Del Cid believed that Pinkins used a house located a few hundred feet down the alley at 4827 West Crystal Street as a base for heroin distribution. Approximately one month earlier, Hammonds's brother, Terrell Hammonds, had been arrested by other members of the officers' investigative team after they observed Terrell Hammonds leaving the house and engaging in a hand-to-hand transaction with an individual later stopped with heroin. The arresting officers also found heroin on Terrell Hammonds's person at the time of his arrest. Detective Leahy and Officer Del Cid believed that both Terrell Hammonds and Terrance Hammonds lived at 4827 West Crystal Street.

Detective Leahy sent a radio message to Officers Del Cid and Scott Korhonen, who were also working on the same investigation that night, notifying them where he had observed Pinkins. Officers Del Cid and Korhonen drove in that direction in an unmarked Ford Explorer. While both officers were in plain clothes, they also wore police vests that displayed a star and the words "Chicago Police," and they had their firearms visible at their side in their holsters. While stopped at a red light at the intersection, the officers observed two individuals walking away from each other at the mouth of the alley from Cicero Avenue onto Division Street. After the light changed, the officers drove in the direction of one of the individuals, who was walking on the sidewalk next to a gas station. As the officers' car passed the individual, Officer Del Cid recognized him as

Hammonds. Officer Del Cid observed Hammonds, after seeing the officers, remove an object from his pocket and place it in his mouth.

Officer Korhonen, who was driving, turned into the gas station in front of Hammonds, stopping the car about fifteen feet away from him. Officer Del Cid left the vehicle while Officer Korhonen remained behind. Approaching Hammonds, Officer Del Cid ordered Hammonds to stop and began asking him questions. Hammonds was unable to respond as he attempted to swallow an object in his mouth. Officer Del Cid then told Hammonds to spit out the object in his mouth. While Officer Del Cid was attempting to question Hammonds, Officer Korhonen parked the car and walked over. He also told Hammonds to spit out what was in his mouth. Hammonds finally spat out the item in question, which Officer Del Cid immediately recognized as a bag of heroin.

Approximately one minute after Detective Leahy placed the original radio call, he returned to find Officers Del Cid and Korhonen with Hammonds in the parking lot of the gas station. The officers told Detective Leahy they had recovered heroin from Hammonds. Hammonds was then arrested and transported to the police station.

## DISCUSSION

The Superseding Indictment charges Hammonds with conspiring to possess with intent to distribute one kilogram or more of a mixture and substance containing heroin (Count One) and possession with intent to distribute a mixture or substance containing of heroin (Count Sixteen). Hammonds has moved to suppress the evidence obtained from what he claims was an illegal search and seizure on March 3, 2017. The Government, for its part, contends that the encounter between Hammonds and Officers Del Cid and Korhonen was consensual or, in the alternative, that it was an investigatory stop supported by reasonable suspicion.

## I. The Encounter Was Non-Consensual

The Fourth Amendment protects individuals from unreasonable searches and seizures. If law enforcement violates the Fourth Amendment to obtain evidence, that evidence cannot be used against the subject of the illegal search and seizure. *United States v. Calandra*, 414 U.S. 338, 347 (1974). Hammonds asserts that the officers illegally seized him when they stopped and questioned him; the Government counters that the interaction was consensual, or in the alternative, that the interaction was an investigative stop justified by the officers' reasonable suspicion that Hammonds had engaged in drug trafficking.

The Seventh Circuit recognizes three types of police-citizen encounters: a consensual encounter, an investigatory stop, and an arrest. A consensual encounter between a private citizen and a police officer is not a seizure because it involves no restraint on liberty; therefore, when such an encounter occurs, "the degree of suspicion required [by the officer] is zero." *United States v. Nobles*, 69 F.3d 172, 180 (7th Cir. 1995). Approaching a person to ask a question he is free to refuse to answer, for instance, involves such a limited curtailment of liberty that no suspicion is required. *United States v. Burton*, 441 F.3d 509, 511 (7th Cir. 2006). But an encounter is consensual only if "a reasonable person would feel free to disregard the police and go about his business." *United States v. Yusuff*, 96 F.3d 982, 985 (7th Cir. 1996) (citing *California v. Hodari D.*, 499 U.S. 621, 628 (1991)); *see also Florida v. Bostick*, 501 U.S. 429, 437 (1991). "[T]he crucial test is whether, taking in to account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Florida v. Bostick*, 501 U.S. 429, 437 (1991) (internal quotation marks omitted).[1] The second type of encounter is an investigatory or

---

[1] This is a factual determination involving review of factors including: "(1) whether the encounter occurred in a public place; (2) whether the suspect consented to speak with the officers; (3) whether the officers

*Terry* stop.[2] An "officer may conduct a brief, non-intrusive detention of a person if the officer has specific and articulable facts sufficient to give rise to a reasonable suspicion that a person has committed or is committing a crime." *United States v. Scheets*, 188 F.3d 829, 837 (7th Cir. 1999). The third type of encounter is an arrest, which "is characterized by highly intrusive or lengthy search or detention." *United States v. Black*, 675 F.2d 129, 133 (7th Cir. 1982). An arrest must be based on probable cause, which exists when facts known to the officer at the time of the arrest are enough for a reasonably cautious person to believe that the arrestee has committed or is committing a crime. *Id*.

Here, the Government contends that the encounter between the officers and Hammonds was a consensual one. But there is a difference between a non-coercive field interview and the interaction that took place between the officers and Hammonds. The officers did not simply walk up to Hammonds on the sidewalk to see if he was willing to answer a few questions. Rather, Officer Korhonen turned the officers' vehicle into Hammonds's path. While Officer Del Cid testified that Hammonds was not actually blocked by the officers because he could have turned around and walked the other direction, the Court doubts a reasonable person in Hammonds's position would have believed that he could have ended the encounter in that manner taking into account the surrounding circumstances. According to the testimony at the evidentiary hearing, immediately after the officers stopped their car, Officer Del Cid stepped out, instructed

---

informed the individual that he was not under arrest and was free to leave; (4) whether the individuals were moved to another area; (5) whether there was a threatening presence of several officers and a display of weapons or physical force; (6) whether the officers deprived the defendant of documents she needed to continue on her way; and (7) whether the officers' tone of voice was such that their requests would likely be obeyed." *Nobles*, 69 F.3d at 180–81.

[2] This is a reference to *Terry v. Ohio*, 392 U.S. 1 (1968), in which the United States Supreme Court held that under the Fourth Amendment, police officers are permitted to conduct a brief investigatory stop (or *Terry* stop) upon reasonable suspicion that an individual has committed, is committing, or is about to commit a crime. *See also United States v. Williams*, 731 F.3d 678, 683 (7th Cir. 2013).

Hammonds to stop, and immediately began asking him a series of questions. Officer Del Cid repeatedly told Hammonds to spit out what was in his mouth. As this interaction was taking place, Officer Korhonen also exited the vehicle, walked over, and began asking Hammonds to spit out the item in his mouth. Confronted by both officers, Hammonds finally followed their instruction.

No party disputes that this was a brief encounter. But it was not one characterized by cooperation and non-coercive =questioning. *Nobles*, 69 F.3d at 180. The officers blocked Hammonds's path and repeatedly ordered him to produce the item in his mouth without advising him that he was free to leave. *See United States v. Smith*, 794 F.3d 681, 683–85 (7th Cir. 2015) (finding a nonconsensual stop where the defendant's path was obstructed by officers who approached him in a dark alley at night and immediately began asking questions). While neither officer drew his weapon, their firearms were visible. And as in *Smith*, neither Officer Del Cid nor Officer Korhonen took the time to introduce themselves, ask Hammonds who he was, or engage in any sort of pleasantries: the encounter began immediately with an interrogation followed shortly by a demand that Hammonds produce the object in his mouth. While neither officer used physical force, Officer Del Cid ordered Hammonds to stop and repeatedly told him to spit out the object in his mouth; he did not ask Hammonds to stop and suggest he spit out the object or inform Hammonds that he would be in danger of choking if he did not spit it out. The phrasing of the instruction as an order matters: it makes it more difficult to believe a reasonable person would have felt free to ignore the officers' demands. *Cf. People v. Love*, 769 N.E.2d 10, 16 (Ill. 2002) (finding that the defendant did not voluntarily agree to spit out an object after an officer told her to "spit out what she had in her mouth," but nonetheless finding the search constitutionally permissible on other grounds); *People v. Harper*, 603 N.E. 2d 115, 118 (Ill. App. Ct. 1992)

6

(officers engaged in a search when they shined flashlights into a defendant's mouth and ordered him to spit out a paper packet on his tongue).

The Government contends that Officer Del Cid ordered Hammonds to spit out the item in his mouth out of concern that Hammonds might choke. Indeed, Officer Del Cid testified that Hammonds appeared to be unsuccessfully attempting to swallow an object, and if it were heroin, Hammonds could "choke and die." But the evidence does not support the conclusion that Hammonds was actually choking or unable to breathe at the time the officers stopped him (or that the officers believed that to be the case). Moreover, Officer Del Cid testified that during the encounter, he asked Hammonds questions about where he had been and why he was in this particular location. Had there been a genuine concern that Hammonds was choking on the item in his mouth, one would expect the officers to have either stopped trying to get Hammonds to speak or inquired about his ability to breathe. Moreover, Officer Del Cid also testified that, based on his prior experience and training, he believed individuals sometimes attempt to conceal drugs by placing them in their mouths. While Officer Del Cid had not been able to identify the object in Hammonds's mouth as heroin, it seems likely he believed it to be some form of incriminating evidence. In sum, the Court cannot conclude that the officers told Hammonds to spit out the item in his mouth out of concern for his well-being. Moreover, even if that were the officers' motivation, that would not necessarily indicate that a reasonable person in Hammonds's position would have felt free to leave the encounter.

Given these circumstances, a reasonable person would not have felt at liberty to ignore the police presence and go about his business. As a result, the Court finds that this was not a consensual encounter.

## II. The Officers Did Not Have Reasonable Suspicion

As an alternative basis for finding that the heroin was seized lawfully, the Government argues that the officers had reasonable suspicion to stop Hammonds. A consensual encounter can develop into an investigatory stop based on the conduct of the officers involved. *United States v. Odum*, 72 F.3d 1279, 1283 (7th Cir. 1995). A police officer may briefly detain an individual provided that the officer's decision to do so is based on specific, articulable facts that give rise to a reasonable suspicion that the person has committed or is committing a crime. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). In determining whether a stop is supported by reasonable suspicion, courts "consider the totality of the circumstances as they were presented to the officer at the time of the encounter." *Scheets*, 188 F.3d at 837. But the officer must be able to articulate more than what amounts to an "inchoate and unparticularized suspicion or hunch." *Terry*, 393 U.S. at 27; *see also United States v. Dennis*, 115 F.3d 524, 532 (7th Cir. 1997) (law enforcement must articulate the "specific characteristics exhibited by the person or object to be detained which aroused the authorities' suspicion"). "The government bears the burden of establishing reasonable suspicion by a preponderance of the evidence." *United States v. Uribe*, 709 F.3d 646, 650 (7th Cir. 2013).

The Government argues that Officers Del Cid and Korhonen had reasonable suspicion to justify an investigatory stop because their investigation team had identified the nearby area as a heroin distribution center, Hammonds lived at the residence where his brother had been distributing heroin, and Officer Del Cid spotted two individuals (one of whom was the not-yet-identified Hammonds) walking away from each other at the mouth of an alley in a manner he suspected to be indicative of a hand-to-hand drug transaction. Based on the record, however, the Court cannot conclude that these observations sufficed to create reasonable suspicion.

Officer Del Cid may very well have believed that a drug transaction had just occurred between the two individuals near the alley. But he had nothing more than a "hunch" that this was the case: he had observed no exchange of material or money and could not identify either individual.[3] The Government points to Hammonds's placing of ***an object*** in his mouth as the officers drove closer to him as evidence that Officer Del Cid had reasonable suspicion that Hammonds had placed ***drugs*** in his mouth. But Officer Del Cid could not identify the object Hammonds placed in his mouth. He may have recognized Hammonds as the brother of an individual arrested for possession of heroin, and as an individual believed to be residing at a home suspected of being a heroin distribution center. But all that Officer Del Cid actually observed was a person, later identified as Hammonds, walking away from another individual and placing an unidentified object in his mouth. At no time did Officer Del Cid see Hammonds engaging in drug-related activity.

The facts known to the officers at the time they stopped Hammond do not establish an articulable basis for believing that a crime had been, or was about to be, committed. They were aware that a nearby building was suspected of being home to a drug operation run by Pinkins. They observed Hammonds walking on the sidewalk away from an alley and another individual. They did not overhear any conversations, they did not know where Hammonds had come from or where he was going, and they did not observe any exchange of material. In short, the record contains no evidence that the officers saw any crime being committed or had specific and articulable facts to support a suspicion that Hammonds was involved in a crime.

\*\*\*

---

[3] The Government's response brief asserts that Officer Del Cid witnessed "a quick interaction" between the two individuals in the alley before they parted ways. But Officer Del Cid gave no such testimony at the evidentiary hearing: he merely stated that he saw two individuals walking away from each other.

In short, the evidence does not support the conclusion that the officers' search of Hammonds was the result of a consensual encounter or that the officers had reasonable suspicion that Hammonds engaged in unlawful conduct. The officers' stop and search of Hammonds was thus unlawful and the bag of heroin found as a result of this encounter was illegally seized. The Court therefore grants Hammonds's motion to suppress with respect to the quantity of heroin discovered during the March 3, 2017 search.

## CONCLUSION

For the foregoing reasons, Hammonds's motion to suppress (Dkt. No. 213) is granted.

ENTERED:

Dated: October 31, 2019

Andrea R. Wood
United States District Judge